**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| KIMBERLY PATRICK,<br>　　　　Appellant, | DOCKET NUMBER<br>NY-0752-12-0130-I-6 |
| 　　v. | |
| FEDERAL DEPOSIT INSURANCE<br>　　CORPORATION,<br>　　　　Agency. | DATE:  April 29, 2024 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Kimberly Patrick, Parlin, New Jersey, pro se.

Beth A. Wilt, Esquire, Arlington, Virginia, for the agency.

Scott David Cooper, Esquire, Fairfax, Virginia, for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

**FINAL ORDER**

The agency has filed a petition for review of the initial decision that reversed the appellant's removal, and the appellant has filed a cross petition for review of the initial decision and a motion to dismiss the agency's petition for review for failure to comply with the administrative judge's interim relief order.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

For the reasons discussed below, we DENY the appellant's motion to dismiss, GRANT the agency's petition for review, DENY the appellant's cross petition for review, and REVERSE the initial decision. The appellant's removal is SUSTAINED.

## BACKGROUND

The appellant was a Grade-12 Examiner for the agency. *Patrick v. Federal Deposit Insurance Corporation*, MSPB Docket No. NY-0752-12-0130-I-4, Appeal File (I-4 AF), Tab 43 at 41. In her position, she participated in, and sometimes directed, the examination of banks in order to determine their financial condition, evaluate their management, and ascertain their compliance with applicable laws and regulations. I-4 AF, Tab 44 at 103.

On October 15, 2008, the agency proposed the appellant's removal based on 16 specifications of "excessive absences resulting in [the appellant's] inability to perform [her] duties on a regular basis." I-4 AF, Tab 43 at 63. The specifications charged that the appellant was absent from duty and had been granted leave without pay (LWOP) for the partial pay period from March 5, 2008, through March 14, 2008, and for each full pay period from March 17, 2008, through October 3, 2008. *Id.* at 64-66. Following the appellant's written response, in which she challenged the action and alleged retaliation for whistleblowing activity, *id.* at 52-61, the deciding official issued a January 9, 2009 decision sustaining the charge and removing the appellant, effective January 16, 2009, *id.* at 43-49.

After some proceedings in Federal district court, on March 28, 2012, the appellant filed this Board appeal, challenging her removal and raising an affirmative defense of whistleblower retaliation. *Patrick v. Federal Deposit Insurance Corporation*, MSPB Docket No. NY-0752-12-0130-I-1, Initial Appeal File (IAF), Tab 1 at 5, 10-11. There ensued several years of delay related to the district court proceedings. Ultimately, however, the Board appeal proceeded to

adjudication, and the administrative judge issued an initial decision reversing the removal on due process grounds. *Patrick v. Federal Deposit Insurance Corporation*, MSPB Docket No. NY-0752-12-0130-I-6, Appeal File (I-6 AF), Tab 87, Initial Decision (ID). Specifically, she found that the deciding official violated the appellant's right to due process by basing his decision on absences that occurred both before and after those set forth in the charge.[2] ID at 14-16. She ordered the agency to provide the appellant interim relief in the event that either party petitioned for review. ID at 17.

The agency has filed a petition for review, Petition for Review (PFR) File, Tab 1, and the appellant has filed a motion to dismiss the agency's petition for failure to provide interim relief, PFR File, Tab 3, a response to the agency's petition, PFR File, Tab 9, and a cross petition for review. PFR File, Tab 10. The agency has filed a reply to the appellant's response to its petition for review, PFR File, Tab 13, and a response to her cross petition for review. PFR File, Tab 15.

## ANALYSIS

<u>The appellant's motion to dismiss the agency's petition for review for failure to provide interim relief is denied.</u>

When, as here, the appellant was the prevailing party in the initial decision and interim relief was ordered, a petition for review filed by the agency must be accompanied by a certification that the agency has complied with the interim relief order, either by providing the interim relief ordered, or by making a determination that returning the appellant to the place of employment would cause undue disruption to the work environment. 5 U.S.C. § 7701(b)(2)(A)(ii), (B); 5 C.F.R. § 1201.116(a); *see Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 6 (2015).

In its petition for review, the agency questions the propriety of the interim relief order because the appellant admitted that her impairment prevents her from

---

[2] The administrative judge found that the appellant did not prove her whistleblower defense. ID at 12-14.

returning to duty, and because the appellant is currently receiving disability payments from both the Social Security Administration and the Office of Personnel Management. PFR File, Tab 1 at 16-17. Nevertheless, the agency representative also certified under oath that the agency has fully complied with the administrative judge's interim relief order. *Id.* at 16. In her motion to dismiss, the appellant argues that the agency has not provided her interim relief, chiefly because it has not sent her a standard form (SF) 50 documenting the cancellation of its removal action. PFR File, Tab 3. The appellant has included copies of correspondence with the agency regarding her return to duty. PFR File, Tab 3 at 13-18, Tab 4 at 5-8.

Ordinarily, when an appellant challenges the agency's certification of compliance with an interim relief order, the Board will issue an order affording the agency the opportunity to submit evidence of compliance. 5 C.F.R. § 1201.116(b). If the agency fails to provide evidence of compliance in response to such an order, the Board may, at its discretion, dismiss the agency's petition for review. 5 C.F.R. § 1201.116(e). In this case, however, we find it unnecessary to issue such an order because the appellant has herself submitted evidence demonstrating that the agency is in compliance with the administrative judge's interim relief order. That evidence shows that the agency has restored the appellant to her former position by ordering her to return to duty and describing how that process would be accomplished, and it has explained that an SF-50 documenting her restoration is available to her through the agency's secure email system once she returns to duty. PFR File, Tab 3 at 13-18, Tab 4 at 5-8. That the SF-50 documenting the appellant's restoration to duty was not mailed to her is immaterial. An SF-50 is only documentation of a personnel action; it does not constitute the personnel action itself, and it does not control an employee's status and rights. *Fox v. Department of the Army*, 120 M.S.P.R. 529, ¶ 22 (2014); *Hunt-O'Neal v. Office of Personnel Management*, 116 M.S.P.R. 286, ¶ 10 (2011); *see Grigsby v. Department of Commerce*, 729 F.2d 772, 774–76 (Fed. Cir. 1984).

That the appellant disagrees with the agency's position on this matter and has chosen not to return to the workplace fails to support a finding that the agency is not in compliance with the administrative judge's interim relief order, and we therefore decline to dismiss the agency's petition for review on that basis.

<u>The agency did not violate the appellant's right to due process.</u>

The administrative judge reversed the appellant's removal, finding that the agency violated the appellant's right to due process because the deciding official based his decision on the appellant's absences from October 23, 2007, through January 9, 2009, the date the decision letter was issued, despite the fact the charge only referenced the appellant's absences from March 5, 2008, through October 3, 2008.  ID at 14-15.  Specifically, the administrative judge found that the deciding official referred several times in the decision letter to having considered the appellant's absences from October 22, 2007, and continuing, and that his hearing testimony was essentially in accord, until he began to "catch on" to the "problem," whereupon he then stated that he only considered the appellant's excessive absences as set forth in the specifications under the charge.  ID at 15; I-4 AF, Tab 43 at 43-49; Hearing Transcript (HT) at 51, 68-69 (testimony of the deciding official).  In suggesting that the deciding official thereby considered new and material evidence, and that such consideration constituted a violation of the appellant's due process rights, the administrative judge relied upon *Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368 (Fed. Cir. 1999).  ID at 14.  The agency argues on review that *Stone* does not support reversing the appellant's removal.  PFR File, Tab 1 at 9-10.  We agree.

In *Stone,* the court held that the introduction of new and material information by means of ex parte communications to the deciding official undermines the public employee's constitutional due process guarantee of notice and the opportunity to respond, and that procedural due process guarantees are not met if the employee has notice only of certain charges or portions of the

evidence and the deciding official considers new and material information.[3] *Stone*, 179 F.3d at 1376. Here, although the administrative judge found that the deciding official based his decision on absences that occurred both before and after those identified in the specifications, ID at 14, we find that the deciding official found "all specifications contained in the October 15, 2008 Letter of Proposed Removal [] sustained."[4] I-4 AF, Tab 43 at 48 (emphasis removed). To the extent that the deciding official described all of the appellant's absences, those the administrative judge referred to as an ex parte communication were also clearly referenced in the proposal notice in describing the appellant's continuous absence. *Id.* at 63-64.

Moreover, even if the absences that occurred both before and after those described in the proposal notice were considered an ex parte communication, not every ex parte communication is a procedural defect so substantial and so likely to cause prejudice that it undermines the due process guarantee and entitles the claimant to an entirely new administrative proceeding, and only ex parte communications that introduce new and material information to the deciding official will violate the due process guarantee of notice. *Stone*, 179 F.3d at 1376-77. Among the factors deemed useful for the Board to weigh in considering whether new and material information has been introduced by means

---

[3] Ex parte communications have been broadly construed to include information known by the deciding official. *Stone*, 179 F.3d at 1376. The real focus of *Stone* and its progeny is the consideration of information of which the appellant was not afforded notice and an opportunity to respond and is grounded in the Supreme Court's decision in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), which extended the Fifth Amendment Due Process Clause to an individual's loss of Government employment.

[4] We have reviewed the deciding official's hearing testimony, particularly that described by the administrative judge as his "catching on" to "the problem." ID at 15. Contrary to the administrative judge's findings, we find that, after his memory was refreshed by his examination of the decision letter, which was drafted approximately 9 years before the Board hearing, the deciding official testified that he considered as excessive absences those set forth under the specifications in the notice of proposed removal. HT at 67-69 (testimony of the deciding official).

of ex parte contacts are whether the ex parte communication introduces cumulative information or new information; whether the employee knew of the error and had a chance to respond to it; and whether the ex parte communication was of the type likely to result in undue pressure upon the deciding official to rule in a particular manner. *Stone*, 179 F.3d at 1377.

Although the administrative judge cited *Stone*, ID at 14, she did not address the *Stone* factors. We do so now. First, in the decision letter, the deciding official described the appellant's absences from the time they began in 2007, prior to considering the absences charged in the proposal notice, I-4 AF, Tab 43 at 43, as did the proposal notice itself, *id.* at 63, and therefore that information cannot be considered "new." Moreover, the appellant addressed her absences beginning in 2007 in her reply to the proposal notice. *Id.* at 52-53. While the deciding official briefly noted in the decision letter that the appellant had not returned to work "to date," that is, to the date the decision letter was issued, *id.* at 63, such that the appellant did not have an opportunity to address those absences, there is no suggestion that the deciding official's description of any of the appellant's absences either before or after the significant 7-month period of absences set forth in the proposal notice's specifications was likely to result in undue pressure upon him to rule in a particular manner. Weighing the *Stone* factors, we find that the information alleged to be an ex parte communication was not "so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under such circumstances." *Stone*, 179 F.3d at 1377. We therefore find that the agency did not violate the appellant's due process rights and that the removal cannot be reversed on that basis.[5]

_____

[5] Although we have found that there was no due process violation, we must determine whether the deciding official's consideration of the information at issue may have constituted harmful procedural error. We find that the appellant has not shown that any such error was likely to have caused the agency to have reached a different conclusion about the removal action, given the extent of her absences. *See Mathis v. Department of State*, 122 M.S.P.R. 507, ¶ 16 n.4 (2015); *Tom v. Department of the Interior*,

The agency has proven its charge of excessive absences.

As a general rule, an agency may not take an adverse action based on an employee's use of approved leave. *Coombs v. Social Security Administration*, 91 M.S.P.R. 148, ¶ 12 (2002). However, an exception exists when the following criteria are met: (1) the employee was absent for compelling reasons beyond his control so that agency approval or disapproval of leave was immaterial because he could not be on the job; (2) the absences continued beyond a reasonable time, and the agency warned the employee that an adverse action could be taken unless he became available for duty on a regular, full-time or part-time basis; and (3) the agency showed that the position needed to be filled by an employee available for duty on a regular, full-time or part-time basis. *Cook v. Department of the Army*, 18 M.S.P.R. 610, 611-12 (1984). This exception is applicable only under unusual circumstances, such as when the employee is unable to return to duty because of the continuing effects of illness or injury. *Id.*

For the reasons explained in the initial decision, we agree with the administrative judge that the first criterion is met. ID at 10; I-6 AF, Tab 53. As to the second criterion, we observe that the agency did not warn the appellant until on or about August 6, 2008, that she could be removed for excessive approved absences unless she returned to duty by August 18, 2008. I-4 AF, Tab 43 at 113-14. The Board has held that absences that predate the warning required under *Cook* cannot be used to support an excessive absence charge. *Williams v. Department of Commerce*, 2024 MSPB 8, ¶¶ 6-8. In light of this holding, and given the nature of the agency's return-to-work letter, we find that specifications 1 through 12 of the charge cannot be sustained. I-4 AF, Tab 43 at 64-65. Nevertheless, specifications 13 through 16 cover the period from August 18, 2008, onward and encompass 280 hours of approved LWOP. *Id.* at 65-66. We agree with the administrative judge that these specifications are sustained, ID at 10, and we find that the appellant's complete absence from work

_____

97 M.S.P.R. 395, ¶ 43 (2004).

during these 7 consecutive weeks continued beyond a reasonable time, *see Curtis v. U.S. Postal Service*, 111 M.S.P.R. 626, ¶¶ 2, 10 (2009) (sustaining a charge of excessive absence based on 77 days of LWOP over a 4-month period), *overruled on other grounds by McCauley v. Department of the Interior*, 116 M.S.P.R. 484 (2011); *Gartner v. Department of the Army*, 104 M.S.P.R. 463, ¶¶ 10-11 (2007) (sustaining a charge of excessive absence based on 333.5 hours of absence over a 6-month period). We also agree with the administrative judge that the third *Cook* criterion is satisfied because there were insufficient staff in the appellant's unit to cover the workload in her absence. ID at 10; HT at 15-16 (testimony of the deciding official), 73, 115 (testimony of the appellant's supervisor). Therefore, even excluding the 944 hours of absence covered in specifications 1 through 12, we find that the *Cook* exception applies.

In her cross petition for review, the appellant argues that some of the hours of approved leave cited in the proposal notice were covered under the Family and Medical Leave Act of 1993 (FMLA) and therefore the charge cannot be sustained. PFR File, Tab 10 at 8. However, we find that the administrative judge handled this issue correctly by excluding the FMLA-protected leave from her analysis. ID at 10; I-4 AF, Tab 44 at 7. Although FMLA-protected leave cannot be used to support a charge of excessive absence, *McCauley*, 116 M.S.P.R. 484, ¶ 11, an agency's inclusion of such leave in its charge does not require automatic reversal. The remedy in this situation is for the Board to exclude the FMLA-covered leave from its tabulation of the total absences at issue. *See Hamilton v. U.S. Postal Service*, 84 M.S.P.R. 635, ¶¶ 16-17 (1999). Because all of the claimed FMLA-protected leave falls within the 944 hours already excluded above, the appellant's argument provides insufficient basis to disturb the initial decision.

The appellant also argues that, by removing her "during the statutory one-year period," the agency effectively deprived her of her right to restoration. PFR File, Tab 10 at 9. The appellant's argument pertains to the removal of

compensably injured employees and does not apply to the instant appeal, in which no compensable injury is involved.

The appellant also argues that, in removing her based on the charge of excessive absences, the agency should not have considered the medical documents she submitted to the administrative judge, who placed them under seal. I-6 AF, Tab 53. She argues that the agency's doing so was in violation of a protective order issued by the district court. PFR File, Tab 10 at 13-15. Although the appellant did not serve these documents on the agency at the time she submitted them to the administrative judge, she provided some of the documents to the agency during the period from 2007-2008 and acknowledges that they were subsequently returned to her in connection with her district court litigation. I-6 AF, Tab 53 at 1. To the extent the appellant is alleging that the agency violated the Privacy Act in considering these documents, the Board does not have jurisdiction to adjudicate Privacy Act claims, *Calhoon v. Department of the Treasury*, 90 M.S.P.R. 375, ¶ 15 (2001), and in any event, the appellant has fully litigated her Privacy Act claims through the courts, *Patrick v. Federal Deposit Insurance Corporation*, MSPB Docket No. NY-0752-12-0130-I-5, Appeal File, Tab 32 at 4-11; I-4 AF, Tab 4, Tab 11 at 9. In addition, citing 5 C.F.R. part 339, regarding Medical Qualification Requirements, the appellant argues that the agency's Occupational Medicine Consultant was not authorized to consider her medical documents because her position does not have medical standards. PFR File, Tab 10 at 19. However, part 339 does not preclude an agency from asking for and considering medical documentation in support of an employee's request for LWOP based on the assertion that she is unable to perform her duties. 5 C.F.R. § 339.303. The appellant further argues that the administrative judge omitted consideration of what she describes as certain "material facts" regarding these matters. PFR File, Tab 10 at 16. However, an administrative judge's failure to mention all of the evidence of record does not mean that she did not consider it in reaching her decision. *Marques v.*

*Department of Health and Human Services*, 22 M.S.P.R. 129, 132 (1984), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985) (Table).

For the reasons discussed above, the charge of excessive absence is sustained.

The appellant has not proven her whistleblower defense or her defense of retaliation for grievance activity.

In an adverse action appeal such as this, an appellant's claim of whistleblower retaliation is treated as an affirmative defense. As applicable here, to prove such a claim, an appellant must show by preponderant evidence that she engaged in whistleblowing activity by making a protected disclosure under 5 U.S.C. § 2320(b)(8) that was a contributing factor in the agency's personnel action. *Shannon v. Department of Veterans Affairs*, 121 M.S.P.R. 221, ¶ 21 (2014).

In this case, the administrative judge found that the appellant made disclosures protected under 5 U.S.C. § 2302(b)(8). ID at 12. Specifically, the administrative judge found that, in 2004 and 2005, the appellant complained to her supervisor and a manager about changes that were made to the reports of bank examinations that she prepared. She further found that, because the appellant was not consulted about the changes and the information she deemed critical was deleted from some reports, the appellant reasonably believed that her supervisor and the manager had abused their authority. *Id.*; *see* 5 U.S.C. § 2302(b)(8)(A); *Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶ 18 (2013). We agree that these disclosures were protected.

Nevertheless, the administrative judge found that these disclosures were not a contributing factor in the appellant's removal. ID at 12-14. The most common way of proving contributing factor is the knowledge/timing test of 5 U.S.C. § 1221(e), under which contributing factor may be inferred based on the responsible agency officials' knowledge of the disclosures and the temporal proximity between the disclosures and the action under appeal. In her initial

decision, the administrative judge found, and the appellant did not dispute, that the deciding official lacked actual knowledge of the disclosures. ID at 12-13; HT at 14, 27-29 (testimony of the deciding official). On review, the appellant argues that the deciding official "should have exercised proper due diligence and reasonable care to gain knowledge." PFR File, Tab 10 at 24. However, even if the appellant is correct, we find that this is insufficient to impute knowledge of the disclosures to the deciding official. Nor does there appear to be any evidence that any other official who influenced the removal had knowledge of the appellant's disclosures. We therefore find that the knowledge portion of the knowledge/timing test is not satisfied. *See Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 64.

Furthermore, even if the knowledge portion of the knowledge/timing test had been satisfied, the timing portion was not. As the administrative judge correctly noted, the appellant's disclosures predated the proposed removal by 3 or more years. ID at 12-13. This gap in time is too great to satisfy the timing portion of the knowledge/timing test. *See Salinas v. Department of the Army*, 94 M.S.P.R. 54, ¶ 10 (2003) (holding that a gap of more than 2 years between the appellant's disclosure and the challenged personnel action was too great to satisfy the timing portion of the knowledge/timing test). On review, the appellant argues that, under the statute, a disclosure will be considered protected regardless of the amount of time that has elapsed since the disclosure. PFR File, Tab 10 at 25. Although this is true, *see* 5 U.S.C. § 2302(f)(1)(G), the question is not whether the appellant's disclosures were protected, but whether they were a contributing factor in the appellant's removal. For the reasons explained above, we find that the appellant has not established contributing factor under the knowledge/timing test.

If an appellant has failed to satisfy the knowledge/timing test, the Board will consider other evidence of contributing factor, such as evidence pertaining to the strength or weakness of the agency's reasons for taking the personnel action,

whether the whistleblowing was personally directed at the proposing or deciding officials, and whether these individuals had a desire or motive to retaliate against the appellant. *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 15 (2012). Here, the evidence shows that, in light of the appellant's lengthy absence with no foreseeable end, the agency had strong reasons in support of its removal action. In addition, the disclosures in 2004 and 2005 were not directed at either the proposing or deciding officials. The evidence further shows that the deciding official did not know the appellant, HT at 14 (testimony of the deciding official), and the proposing official was far removed from her organizationally. The appellant has not alleged that either had a motive or desire to retaliate against her. We therefore agree with the administrative judge that the appellant failed to prove that her disclosures were a contributing factor in her removal.[6]

The appellant also argues on review that the eight grievances she filed or attempted to file were also protected disclosures under the Whistleblower Protection Enhancements Act of 2012 (WPEA).[7] PFR File, Tab 10 at 26. According to her, these disclosures generally described wrongdoing by the agency, including interfering in the way she performed her job duties, unfairly criticizing her work in performance evaluations, and denying her telework. I-6 AF, Tab 27 at 16-19. Although the administrative judge noted that the appellant filed grievances in 2005 and 2006, and also filed suit against the agency, ID at 5, the administrative judge did not specifically consider these

---

[6] Because we have found that the appellant failed to prove that her disclosures were a contributing factor in her removal, we do not reach the issue of whether the agency proved by clear and convincing evidence that it would have removed her absent her disclosures. *See Clarke v. Department of Veterans Affairs*, 121 M.S.P.R. 154, ¶ 19 n.10 (2014), *aff'd per curiam*, 623 F. App'x 1016 (Fed. Cir. 2015).

[7] According to the appellant, she "attempted to file" certain of these grievances, but either the union steward would not sign the paperwork or the agency refused to hear the matter. The appellant did not enter any of the grievances into the record, insisting that doing so would violate the court's protective order, IAF, Tab 8 at 7, and the administrative judge did not disagree. The appellant did, however, describe each of the grievances. I-6 AF, Tab 27 at 16-19.

filings in the discussion of the appellant's whistleblower retaliation claim. The agency argues that any such consideration is precluded under the WPEA because the appellant filed her grievances in 2005 and 2006 and was removed in January 2009, nearly 4 years before the December 12, 2012 effective date of the legislation enacting the WPEA.[8] PFR File, Tab 15 at 10. Even if the WPEA does not apply, however, the appellant's claim of retaliation for her having filed grievances remains viable because, prior to the enactment of the WPEA, 5 U.S.C. § 2302(b)(9) made it a prohibited personnel practice to retaliate against an employee or applicant for employment "because of the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation." *Wheeler v. Department of Veterans Affairs*, 88 M.S.P.R. 236, ¶ 9 (2001).

For an appellant to establish such a claim of retaliation, she must show that: (1) she engaged in the activity; (2) the accused official knew of such activity; (3) the adverse action under review could, under the circumstances, have been retaliation; and (4) there was a genuine nexus between the alleged retaliation and the adverse employment action. *Warren v. Department of the Army*, 804 F.2d 654, 656-58 (Fed. Cir. 1986). When, as here, the record is complete, the Board will not inquire as to whether the action under review "could have been" retaliatory, but will proceed to the ultimate question, which is whether, upon weighing the evidence presented by both parties, the appellant has met her overall burden of proving by preponderant evidence that the action under appeal was retaliatory. *See Simien v. U.S. Postal Service*, 99 M.S.P.R. 237, ¶ 28 (2005).

---

[8] Citing the Board's decision in *Day v. Department of Homeland Security*, 119 M.S.P.R. 589 (2013), the appellant argues that the WPEA was retroactive. PFR File, Tab 10 at 29. In *Day*, the Board found an exception to the broadly applicable presumption that statutes are not retroactive, explaining that certain provisions of the WPEA were retroactive because they specifically sought to clarify then-existing interpretations of the statutory scheme and not create new rights and liabilities. *Landgraf v. USI Film Products*, 511 U.S. 244, 265-66 (1994); *Day*, 119 M.S.P.R. 589, ¶¶ 10-26. The statutory provisions identified in *Day* are not at issue in this appeal. Furthermore, the appellant has not identified another basis for finding the WPEA applicable to an appeal in which the protected disclosures, the personnel action, and even the filing of the appeal all pre-dated the passage of the statute.

The administrative judge found that the manager who was the subject of the appellant's disclosures retired more than 1 year before the appellant's removal was recommended and that, while her supervisor who was also named knew that the appellant had filed grievances, he testified that he did not know what was stated in them and did not know, when he recommended her removal, that she had filed suit against the agency. ID at 12-13; HT at 7, 92 (testimony of the appellant's supervisor). In addition, as noted, the deciding official testified that he had no knowledge of the appellant's disclosures, including her grievances, apart from what she said in her response to the notice of proposed removal. HT at 27-29 (testimony of the deciding official).

To establish a genuine nexus between the protected activity and the adverse action, the appellant must prove that the action was taken because of the protected activity. *Williams v. Social Security Administration*, 101 M.S.P.R. 587, ¶ 12 (2006). This requires the Board to weigh the intensity of the motivation to retaliate against the gravity of the misconduct, *id.*, considering the gravity of the misconduct as it appeared to the deciding official at the time he took the adverse action, *Otterstedt v. U.S. Postal Service*, 96 M.S.P.R. 688, ¶ 23 (2004). The deciding official testified that he considered the appropriate factors in determining to uphold the appellant's proposed removal, notably, that she had taken excessive leave with no prospect of returning, no lesser penalty seemed feasible, the position needed to be filled, and the appellant's allegation of retaliation had no impact on his decision. HT at 31-32 (testimony of the deciding official). Although we find that the appellant engaged in protected activity by filing grievances, there was little or no motivation to retaliate against her on the part of the deciding official, given his lack of knowledge, and that the agency had legitimate reasons for effecting the non-disciplinary removal. We therefore find that the appellant failed to show that the agency retaliated against her for filing grievances.

<u>The agency has established that there is a nexus between the sustained charge and the efficiency of the service and that removal is a reasonable penalty.[9]</u>

Disciplinary action is warranted based on a sustained charge of excessive absence. The Board has held that a prolonged absence with no foreseeable end can provide just cause for removal because it constitutes a burden that no employer can efficiently endure and it therefore establishes a nexus to the efficiency of the service. *Campbell v. U.S. Postal Service*, 94 M.S.P.R. 646, ¶ 17 (2003).

Regarding the penalty, when, as here, the agency's charge is sustained, the Board will review the agency-imposed penalty to determine if the agency considered all of the relevant factors and exercised management discretion within the tolerable limits of reasonableness. *Singletary v. Department of the Air Force*, 94 M.S.P.R. 553, ¶ 9 (2003), *aff'd*, 104 F. App'x 155 (Fed. Cir. 2004). In making this determination, the Board must give due weight to the agency's primary discretion in maintaining employee discipline and efficiency. *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 306 (1981).

In his decision letter, the deciding official stated that he considered that the appellant's prolonged absence for which there was no foreseeable end detracted from the efficiency of the agency's examination program, and that her position needed to be filled; that her supervisors had lost confidence in her dependability and reliability in the performance of her duties; that the removal decision was consistent with actions taken by the agency against other similarly situated employees; that the appellant was on clear notice that her excessive absences had caused an undue hardship on the operation of the field office; and that there was little potential for her rehabilitation. I-4 AF, Tab 43 at 45-48. The deciding official also considered that the appellant had no prior disciplinary record; that she had more than 10 years of Federal service and more than 7 years of service with the agency, during which time she progressed from Grade 7 to Grade 12; and

---

[9] These are issues that the administrative judge did not address. However, we find that the record is sufficiently developed for the Board to address them on review.

that her annual performance ratings for the last 3 years were "Meets Expectations." *Id.* at 46. Notwithstanding, the deciding official stated that there was no other appropriate action than removal. *Id.* at 48. His hearing testimony was in accord. HT at 24, 31 (testimony of the deciding official).

Based on the deciding official's consideration of the appropriate *Douglas* factors, both aggravating and mitigating, we find that the agency's determination does not exceed the bounds of reasonableness and that its removal penalty must be accorded deference. *See Beard v. General Services Administration*, 801 F.2d 1318, 1322 (Fed. Cir. 1986).

## NOTICE OF APPEAL RIGHTS[10]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions

---

[10] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain

judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S.420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[11]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

---

[11] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:

*Gina K. Grippando*

_____

Gina K. Grippando
Clerk of the Board

Washington, D.C.